# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GEORGE WILKINSON,

       Plaintiff,

vs.                                    No. CIV 03-0919 JB/LCS

VILLAGE OF RUIDOSO, a New Mexico Municipal
Corporation, MAYOR LEON EGGLESTON, Mayor
of the Village of Ruidoso, in his individual and official
capacity; Council Members RONALD D. HARDEMAN
and RON ANDERSON, in their individual and official
capacities; Council Members FRANK T. CUMMINS,
LONNIE RAY NUNLEY, ROBERT STERCH, and
DEBORAH MARCUM BYARS, sued in their Official
Capacity,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment, filed April 2, 2004 (Doc. 17). The Court held a hearing on this matter on June 30, 2004. The primary issue is whether the Plaintiff, George Wilkinson, has established a genuine issue of material fact with respect to his discrimination claims against the Defendants. Because the Court finds that Wilkinson did not exhaust his administrative remedies in connection with his claim under the Age Discrimination in Employment Act, and that Wilkinson cannot establish a prima facie case of discrimination under the Americans with Disabilities Act, the Court will grant the Defendants' motion and dismiss Wilkinson's claims.

## FACTUAL BACKGROUND

This case arises out of Wilkinson's application for the position of Village Manager for the Village of Ruidoso.  In August 2002, Leon Eggleston, mayor of the Village of Ruidoso, appointed two of the six city counselors, Ron Hardeman and Ron Anderson, to serve with him on a pre-selection committee to review applications for the position.  See Affidavit of Leon Eggleston ¶ 3, at 2 (executed March 31, 2004); Affidavit of Ronald D. Hardeman ¶ 3, at 1 (executed April 1, 2004); Affidavit of Ronald Anderson ¶ 4, at 1-2 (executed April 1, 2004).  The members of the pre-selection committee devised a grading form to use in reviewing the applications based upon the education and experience they believed was important for a Village Manager in a resort community; the grading form emphasized experience over education, particularly experience working with municipal governments.  See Evaluation Criteria for Manager Positions; Eggleston Aff. ¶ 3, at 2; Hardeman Aff. ¶ 4, at 1-2; Anderson Aff. ¶ 5, at 2.

The members of the pre-selection committee each reviewed the sixty-two applications for the position of Village Manger separately, without conferring with one another, and scored the applicants using the agreed upon grading form.  See Eggleston Aff. ¶ 4, at 2; Hardeman Aff. ¶ 5, at 2; Anderson Aff. ¶ 6, at 2.  It is undisputed that Wilkinson ranked fiftieth out of the sixty-two applicants for the position of Village Manager.  See Applicant Ranking Sheet.  The pre-selection committee decided to grant the top ten ranking applicants, as well as two Village employees who had applied, interviews before the entire City Council.  See Eggleston Aff. ¶ 5 at 2; Hardeman Aff. ¶ 6, at 2; Anderson Aff. ¶ 7, at 2.  Those two Village employees were Mike Runnels, who was serving as Planning Administrator, and Lori McKnight, who was the Acting Village Manager.  See Eggleston Aff. ¶ 5, at 2.  Runnels ranked 15th on the ranking sheet, while McKnight ranked 21st. See Applicant Ranking

Sheet.  The Council interviewed one applicant who ranked lower than Wilkinson, but the Council interviewed him only because Councilman Nunley had specifically requested the interview.  See Eggleston Aff. ¶ 6, at 2; Hardeman Aff. ¶ 6, at 2; Anderson Aff. ¶ 7, at 2.

After the interviews, the entire City Council, by unanimous vote, approved Lori McKnight, the then Acting Village Manager, for the position, based on her experience and the fact that she had been performing well as the Acting Village Manager.  See Eggleston Aff. ¶ 8, at 3; Hardeman Aff. ¶ 7, at 2; Anderson Aff. ¶ 8, at 2.  Anderson had awarded McKnight 65 points on the grading form, whereas Eggleston and Hardeman awarded her 15 points and 20 points, respectively.  See Applicant Ranking Sheet.  Each member of the pre-selection committee had given Wilkinson 15 points on the grading form.  See id.  On Eggleston's grading forms, the only grading forms that the Defendants produced, McKnight received 10 of the 15 available points for education and 5 of the 60 points available for related experience.  See McKnight's Grading Form.  Eggleston gave Wilkinson 15 points for education, but no points for related governmental experience.  See Wilkinson's Grading Form.  Wilkinson asserts that he should have received points for his experience because his application materials indicated governmental work for Brewster County, Texas.  See Wilkinson's Resume ("Writing/Research . . . Technical writer of Emergency Management Plan for Brewster County.  Gathered and organized detailed emergency information into a usable and functional format.").  In his cover letter, however, Wilkinson did not mention past work experience with municipal governments.  Instead, he emphasized his educational qualifications.  See Wilkinson Cover Letter (July 22, 2002)("As you will see from my resume, I have education in Political Science and Public Administration.").

Neither Hardeman nor Anderson knew anything about Wilkinson during the pre-selection and

interview process other than what appeared in his resume.  <u>See</u> Hardeman Aff. ¶ 8, at 2; Anderson

Aff. ¶ 9, at 2-3.  They did not know that Wilkinson suffered from a disability, nor did they have any

knowledge that the alleged disability imposed limitations or required accommodations.  <u>See</u>

Hardeman Aff. ¶ 8, at 2-3; Anderson Aff. ¶ 9, at 3.  Wilkinson does not have evidence that Hardeman

or Anderson had any knowledge of his disability.  <u>See</u> Deposition of George Wilkinson at 66:1-8; <u>id.</u>

at 67:4-17; <u>id.</u> 68:15-22 (taken March 15, 2004).  The same is true of the other City Councilors

whom Wilkinson named as Defendants in this action and who did not serve on the pre-selection

committee.  Wilkinson does not provide evidence that these Councilors knew him, knew of his

disability, or discriminated against him because of that disability.  <u>See</u> <u>id.</u> at 81:22 to 82:21.

The parties disagree whether Eggleston knew Wilkinson before Wilkinson applied for the

Village Manager position.  Eggleston contends that, at the time he reviewed the applications, he did

not have prior knowledge of Wilkinson and did not recognize him as anyone he knew based on the

application.  <u>See</u> Eggleston Aff. ¶ 9, at 3.  Although Eggleston knew Watt and Brooksie Wilkinson,

and their daughter, Carol Hammitt, he maintains that he did not know Watt and Brooksie had a son

named George who was disabled.  <u>See</u> <u>id.</u>

Wilkinson asserts that Eggleston knew him and knew he was disabled.  According to

Wilkinson, Eggleston served as the bartender at the Cree Meadows County Club, where Wilkinson

frequently dined with his mother and father on Mondays and Thursdays; Eggleston would bring

drinks to the table and refer to George by name.  <u>See</u> Wilkinson Depo. at 90:1-13; Affidavit of Watt

Wilkinson ¶¶ 7-11, at 1-2 (executed April 23, 2004); Affidavit of Tag Richards ¶¶ 4-8 at 1 (executed

April 26, 2004).  Eggleston contends that he never worked at the Cree Meadows Country Club on

Thursday evenings; he has worked the 3:00 p.m. to 11:30 p.m. shift on Thursdays at the Lincoln

County Medical Center since November 2001.  <u>See</u> Eggleston Aff. ¶ 12, at 4.  He asserts that he could not have spoken to Wilkinson at that time.  <u>See</u> <u>id.</u>

In his response to the motion for summary judgment, Wilkinson disputes a number of the Defendants' "Material Undisputed Facts," but submits no admissible evidence to controvert them. Wilkinson disputes that the ratings were objective or reasonably related to the actual qualifications for the Village Manager position.  Wilkinson admits the pre-selection committee offered the top 10 ranked applicants an interview before the entire council, but denies there was an agreement to allow two city employees who applied to interview as well.  Wilkinson also denies that Councilman Nunley requested an interview with 55th ranked applicant Timothy Harrod.  Wilkinson contends that McKnight scored higher on the ranking only because Anderson arbitrarily gave McKnight 65 points when the other two members of the pre-selection committee gave her scores of 15 and 20.  Wilkinson also denies that the Defendants lacked knowledge of his disability, but provides no evidence to support that contention.

## PROCEDURAL BACKGROUND

On December 2, 2002, Wilkinson filed a Charge of Discrimination with the New Mexico Human Rights Division.  <u>See</u> Charge of Discrimination (executed December 2, 2002).  Wilkinson alleged that he had suffered discrimination based on his disability: "On July 23, 2002[,] I applied for the position of Village Manager.  On October 29, 2002[,] someone else was selected for the position. . . .  I believe I have been discriminated against because of my disability/handicap in violation of The Americans with Disabilities Act and the New Mexico Human Rights Act."  <u>Id.</u>  Wilkinson did not check the box marked "Age" and did not include age discrimination in the narrative portion of the Charge.  <u>Id.</u>

On August 6, 2003, Wilkinson filed his complaint in federal court.  <u>See</u> Complaint, filed August 6, 2003 (Doc. 1)("Complaint").  In his Complaint, Wilkinson asserts two federal claims: (i) an alleged violation of the Age Discrimination in Employment Act ("ADEA"); and (ii) an alleged violation of the Americans with Disabilities Act ("ADA").  There is a corresponding pendent claim under the New Mexico Human Rights Act for disability and age discrimination.

The Defendants, the Village of Ruidoso, Mayor Leon Eggleston, Ronald D. Hardeman, Ron Anderson, Frank T. Cummins, Lonnie Ray Nunley, Robert Sterch, and Deborah Marcum Byars, move the Court for summary judgment on Wilkinson's claims.  The Defendants assert that no genuine issue of fact exists with respect to these claims, and that they are entitled to judgment as a matter of law.  Wilkinson responded to the Defendants' motion for summary judgment and contends that the irregularities surrounding the hiring process for the Village Manager position raise an inference of discrimination and preclude summary judgment.

At the hearing on this motion, Wilkinson conceded that he has not exhausted his administrative remedies with respect to his age discrimination claim.  <u>See</u> Transcript of Telephonic Motion Hearing at 18:7-13 (filed July 26, 2004)("Transcript")("I do not dispute that there is no viable age discrimination case on behalf of Mr. Wilkinson.").[1]  Wilkinson also conceded that, because an ADA claim only exists against an employer, his claims against the individual Defendants under the ADA cannot survive.  <u>See</u> <u>id.</u> at 18:14-25.  Thus, the only federal claim remaining for the Court's consideration is Wilkinson's ADA claim against the Village of Ruidoso.

---

[1] Because Wilkinson's claim for age discrimination under the New Mexico Human Rights Act also requires exhaustion of administrative remedies, his concession also applies to the state claim.  <u>See</u> <u>Gormley v. Coca-Cola Enterprises</u>,  2004-NMCA-021, ¶¶ 8-11, 85 P.3d 252, 255.

## LAW ON SUMMARY JUDGMENT

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "Summary judgment is appropriate when the record shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Bacchus Industries, Inc. v. Arvin Industries, Inc., 939 F.2d 887, 891 (10th Cir. 1991)(quoting Fed. R. Civ. P. 56(c)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. at 323 (internal quotation marks omitted). A defendant seeking summary judgment may satisfy its burden by pointing to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).

Once the moving party has met its burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Sports Unlimited, Inc. v. Lankford Enterprises, Inc., 275 F.3d 996, 999 (10th Cir. 2002)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The nonmoving party "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Bacchus Industries, Inc. v. Arvin Industries, Inc., 939

F.2d at 891 (citing Clifton v. Craig, 924 F.2d 182, 183 (10th Cir. 1991)).

In this regard, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   The non-moving party cannot rest on mere allegations or denials.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." Bones v. Honeywell International, Inc., 366 F.3d 869, 875 (10th Cir. 2004)(citing Phillips v. Calhoun, 956 F.2d 949, 951 n. 3 (10th Cir. 1992)).  "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." Bones v. Honeywell International, Inc., 366 F.3d at 875 (citing Rice v. United States, 166 F.3d 1088, 1092 (10th Cir. 1999); Allen v. Muskogee, 119 F.3d 837, 846 (10th Cir. 1997)).

"The non-moving party must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact." Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1490 (10th Cir. 1995)(citing Celotex Corp. v. Catrett, 477 U.S. at 324). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  See id. at 249-50.

## LAW ON THE AMERICANS WITH DISABILITIES ACT

Wilkinson contends that the Defendants rejected his employment application because of his disability.  In disparate treatment claims, such as this one, courts apply the burden shifting analysis that the Supreme Court of the United States established in McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973).  See Davidson v. America Online, Inc., 337 F.3d 1179, 1189 (10th Cir. 2003)(citing

Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999)).

> Under that analysis, a plaintiff carries the burden of raising a genuine issue of material fact on each element of his prima facie case. If plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. If defendant articulates a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether the defendant's reason for the adverse employment action is pretextual.

Davidson v. America Online, Inc., 337 F.3d at 1189 (citations omitted).

To establish a prima facie case under the ADA, a plaintiff must establish that: (i) he is disabled

within the meaning of the ADA; (ii) he is qualified to perform the essential functions of the job, with

or without accommodation; and (iii) the employer discriminated against him because of his disability.

See id. at 1188; MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1443 (1996).[2]  To satisfy the third

element of the prima facie case, the United States Court of Appeals for the Tenth Circuit has required

plaintiffs to "provide some evidence that [the] disability was a determining factor in [the employer's]

decision[.]"  Bones v. Honeywell International, Inc., 366 F.3d 869, 878 (2004)(citations omitted).

An employee cannot state a cause of action for disability discrimination when the employer based its

decision on factors unrelated to a disability.  See id.

## ANALYSIS

The Defendants contend that they are entitled to summary judgment because Wilkinson

cannot satisfy his burden to establish a prima facie case of disability discrimination.  They do not

---

[2] Wilkinson argued at the hearing that the standard for establishing a prima facie case should be lower in cases involving failure to hire rather than termination.  See Transcript at 27:2-16.  Based upon a review of Tenth Circuit precedent, however, the Court believes that the same prima facie requirements exists in cases involving both termination and failure to hire.  See Davidson v. America Online, Inc., 337 F.3d at 1188 (articulating third prong of prima facie case as requiring a showing that employer discriminated against plaintiff because of his disability in a failure to hire context).

directly challenge Wilkinson's ability to meet the first and second elements of his prima facie case. Instead, they argue that Wilkinson is unable to satisfy the third element because there is no evidence that they based their decision not to hire him on his disability.  Because the Court finds that the record does not contain evidence to raise an inference that the Defendants based their decision on Wilkinson's disability, the Court will grant the Defendants' motion for summary judgment.

I.   **WILKINSON HAS NOT PRESENTED EVIDENCE ESTABLISHING A GENUINE ISSUE OF MATERIAL FACT REGARDING HIS PRIMA FACIE CASE.**

There is no evidence in the record from which a reasonable jury could infer that the Defendants' failed to hire Wilkinson because of his disability.  There is nothing in the record, other than Wilkinson's allegations, to support the inference that Hardeman, Anderson, or any of the other members of the council knew that Wilkinson suffered from a disability.  There is also no evidence to support the contention that Eggleston communicated his knowledge, if any, to the other Defendants. A plaintiff cannot establish a prima facie case of disability discrimination under the ADA when the employer does not know that the employee is disabled.

> At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee "because of" a disability unless it knows of the disability.  If it does not know of the disability, the employer is firing the employee "because of" some other reason.

Hedberg v. Indiana Bell Telephone Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995).  Thus, in the absence of evidence that the other Defendants knew of Wilkinson's disability, there is no genuine issue of fact whether those Defendants based their hiring decision on Wilkinson's disability.

Eggleston is the only Defendant that arguably knew of Wilkinson's disability.  Although Eggleston denies that he knew of Wilkinson, and of his disability, Wilkinson has pointed to evidence in the record that creates a genuine issue of fact regarding what Eggleston knew.  This factual dispute

precludes an entry of summary judgment on the ground that Eggleston did not know of Wilkinson's disability.

Although the dispute regarding Eggleston's knowledge precludes summary judgment based on a finding that none of the Defendants possessed knowledge of Wilkinson's disability, it does not preclude summary judgment altogether.  Mere knowledge of a disability is insufficient to create a genuine issue of fact whether an employer discriminated against an employee because of his or her disability.  See Kelly v. Drexel University, 94 F.3d 102, 109 (3rd Cir. 1996).

> [W]e hold that the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action.  If we held otherwise, then by a parity of reasoning, a person in a group protected from adverse employment actions i.e., anyone, could establish a prima facie discrimination case merely by demonstrating some adverse action against the individual and that the employer was aware that the employee's characteristic placed him or her in the group, e.g., race, age, or sex.

Id.  Thus, even if the Court accepts as true that Eggleston knew Wilkinson, and knew that he suffered from a disability, Wilkinson bears the burden of establishing a genuine issue of fact whether that knowledge motivated Eggleston's hiring decision.

The Court does not believe that such a genuine issue of fact exists.  The three members of the pre-selection committee each scored Wilkinson's application independently and gave him the same score.  Thus, there is no evidence to support the inference that Eggleston's knowledge of Wilkinson's disability caused him to artificially lower Wilkinson's rating.  Hardeman and Anderson, whom the record indicates lacked knowledge of Wilkinson's disability, gave him the same score that Eggleston gave him.  There is also no evidence to support the contention that Eggleston's knowledge of Wilkinson's disability caused him to artificially inflate McKnight's ranking.  Eggleston gave both

-11-

Wilkinson and McKnight 15 points.

Finally, there is no evidence to support the inference that the pre-selection committee chose not to offer Wilkinson an interview because of his disability. It is undisputed that Wilkinson ranked 50th out of 62 applicants, and that only one person ranking lower than Wilkinson received an interview. And although Wilkinson disputes that this interview occurred at Nunley's request, he provides no admissible evidence to controvert that fact. The only admissible evidence in the record indicates that the committee decided to grant interviews to the top ten applicants, the two current village employees, and one applicant who Nunley specifically requested receive an interview. Under these circumstances, there is no genuine issue whether the Defendants failure to hire Wilkinson was based on his disability. Accordingly, the Court finds that Wilkinson has not established a prima facie case of discrimination and that summary judgment is appropriate.

## II.   WILKINSON HAS NOT PRESENTED EVIDENCE THAT THE DEFENDANTS' LEGITIMATE NON-DISCRIMINATORY REASONS FOR NOT CHOOSING HIM AS THE VILLAGE MANAGER WERE A PRETEXT FOR DISCRIMINATION.

Wilkinson's inability to establish a prima facie case is a sufficient basis for granting summary judgment in favor of the Defendants. Even if, however, Wilkinson were able to satisfy the three elements of his prima facie case, summary judgment is still appropriate. The Defendants have articulated legitimate non-discriminatory reasons for their failure to hire Wilkinson, and Wilkinson is unable to show that those reasons are pretextual.

The Defendants have offered a facially valid reason for their decisions in this case. After reviewing the applications and ranking the applicants, the pre-selection committee decided to grant interviews to the top ten applicants, as well as to the two current village employees. Nunley specifically requested that another applicant, who ranked 55th, be given an interview. These reasons

are unrelated to Wilkinson's disability and thus satisfy the Defendants' burden to articulate a legitimate non-discriminatory reason for their actions. The burden shifts to Wilkinson to establish that those reasons are unworthy of belief.

At oral argument, Wilkinson's primary argument was that Wilkinson was more qualified than McKnight. Even assuming this is true, however, that fact does not create a genuine issue of fact whether the Defendants' proffered reasons for hiring McKnight are unworthy of belief. The Tenth Circuit has rejected district courts' attempts to substitute their own business judgment for that of an employer when a plaintiff contends that he or she was actually the more qualified applicant or employee. See, e.g., Sanchez v. Philip Morris Inc., 992 F.2d 244, 247 (10th Cir. 1993)("Title VII is not violated by the exercise of erroneous or even illogical business judgment."); Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988)(finding that assertion the plaintiff was equally or more qualified than person retained is insufficient to prove pretext).

"[D]istrict courts, when analyzing the pretext issue, do not sit as 'super-personnel departments' free to second-guess the business judgment of an employer." Bullington v. United Airlines, Inc., 186 F.3d at 1318 n.14, overruled in part on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). The relevant inquiry is not whether the Defendants' proffered reasons were "wise, fair or correct," but whether the Defendants "honestly believed those reasons and acted in good faith upon those beliefs." Bullington v. United Airlines, Inc., 186 F.3d at 1318 (citing Sanchez v. Philip Morris Inc., 992 F.2d at 247); Kariotis v. Navistar Int'l Transp. Corp., 131 F.3d 672, 677 (7th Cir.1997)("[A]rguing about the accuracy of the employer's assessment [of plaintiff's performance] is a distraction, because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest." (internal

quotation marks and citations omitted.))).  Thus, the Court declines to engage in an independent review of Wilkinson's and McKnight's relative qualifications.

Wilkinson also argues that irregularities in hiring process establish a genuine issue of fact with respect to pretext.  He points out that McKnight was hired, even though she ranked only 21st; that one of the members of the pre-selection committee gave McKnight an arbitrarily high score; that the council interviewed an applicant ranked lower than Wilkinson; and that the other village employee, Runnels, was not hired even though he ranked higher than McKnight.  Even assuming that these circumstances constitute irregularities in the hiring process, they do not undermine the believability of the Defendants' proffered reasons for their decision.  While procedural irregularities might be sufficient to create an issue of fact on pretext in some cases, the Tenth Circuit has distinguished cases in which those irregularities affect all applicants equally.  See Kendrick v. Penske Transp. Services, Inc., 220 F.3d 1220, 1230 n.9 (10th Cir. 2000)("[W]here the alleged procedural irregularity disadvantaged all potential applicants . . . , rather than just members of a protected class, the fact that a company failed to follow its own procedures does not suggest either that the defendant's proffered reasons for its employment decisions were pretextual or that the defendant was motivated by illegal discrimination.").  In this case, any irregularities that occurred disadvantaged all applicants equally. The applicants who received interviews despite being outside the top ten did not benefit because of disfavor for any protected class, but rather because those applicants had some special characteristic, such as being current village employees or receiving a special request on their behalf.  The Court concludes that Wilkinson has not established a genuine issue of fact with respect to the issue of pretext.  Accordingly, the Court will grant the Defendant's motion for summary judgment and dismiss

the Plaintiff's claim for discrimination under the ADA.[3]

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment is granted, and the

Plaintiff's claims are dismissed.


_____
UNITED STATES DISTRICT JUDGE


Counsel:

J. Robert Beauvais
J. Robert Beauvais, P.A.
Ruidoso, New Mexico

     *Attorney for the Plaintiff*


Richard E. Olson
Rebecca Nichols Johnson
Hinkle, Hensley, Shanor & Martin, L.L.P.
Roswell, New Mexico

     *Attorneys for the Defendants*

---

[3] Because the same evidentiary standards apply to Wilkinson's claim for disability discrimination under the New Mexico Human Rights Act, the Court will grant the Defendants' motion with respect to that claim for the same reasons articulated regarding the ADA claim.  See Garcia-Montoya v. State Treasurer's Office, 2001-NMSC-003, ¶ 39, 16 P.3d 1084, 1099.